# Nixon & Zimmerman Amusement Company v. Lee Lash Company, Appellant.

*Contract—Theater—Advertising drop curtain—Moving pictures.*

Where the proprietor of a theater agrees with the owner of an advertising drop curtain to install the curtain in his theater for a period of five years and to use the same during all intermissions at all performances in consideration of a payment to him of a stated sum for each season, and covenants to return the curtain at the end of the contract, a change in the use of the theater from legitimate theatrical performances to a cheap moving picture and vaudeville show without any intermissions, will end the contract, relieve the owner of the curtain from the money payments he had assumed, and entitle him to a return of the curtain.

Argued Dec. 14, 1910. Appeal, No. 237, Oct. T., 1910, by defendant, from order of C. P. No. 5, Dec. T., 1909, No. 327, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Nixon & Zimmerman Amusement Company v. Lee Lash Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit on contract in writing relating to the use of a drop curtain.

From the record it appeared that the contract in question was as follows:

"LEE LASH COMPANY,
  "140 W. 39th Street,
    "New York City.
                    "Dated at PHILADELPHIA, PA.,
                            "January   , 1908.
"Dear Sirs:
  "I agree to use for five years from August, 1908, your act drop to contain not more than one hundred and five (105) sq. ft. of advertising, in the Park Theatre, Philadelphia, Pa., throughout all intermissions at all perform-

ances. To immediately furnish necessary dimensions and hang it at my expense. To exclude from the house all other advertising except in program. To grant 28 orchestra seats once each season. To furnish on request a list of dark nights, opening and closing dates. To have my stage carpenter promptly place advertisements, and remove them at your direction. To give you preference on equal terms for all theatres I have or acquire. To promptly return your drop to you when this agreement ends.

"In consideration of the above you agree to deliver your drop on or before August 1, 1908; to pay my carpenter 50 cents for placing each advertisement (including removals) and 25 cents for removals only.

"To pay me twelve hundred dollars ($1,200) for seasons of not less than thirty-five weeks, payable in six equal consecutive monthly instalments, commencing November 1st in each season.

"NIXON & ZIMMERMAN AMUSEMENT CO.,

"By.................

"Accepted for LEE LASH COMPANY,"

The action was brought to recover an installment alleged to be due under the contract.

The material portions of the affidavit of defense are set forth in the opinion of the Superior Court.

*Error assigned* was making absolute rule for judgment for want of a sufficient affidavit of defense.

*Henry Budd,* for appellant.—At the time this contract was made a wide distinction was recognized as existing between theatres and "moving picture shows." It is true that within a year or two some of the latter shows have dignified themselves by the title theater, but that does not change their character or wipe out the distinction between them and a regular theater, so far as affects what is concerned in this case.

As bearing upon this see Queen v. Com'rs of Inland

Revenue, L. R. 21 Q. B. Div. 569; Rowland v. Kleber, 1 Pitts. 68; Jacko v. State, 22 Ala. 73.

The contract, by agreement of both parties, is an entire one for five years, and for part performance there cannot be a recovery by the plaintiff unless complete performance has been prevented by the other party: Hartman v. Meighan, 171 Pa. 46; Martin v. Schoenberger, 8 W. & S. 367; Pallman v. Smith, 135 Pa. 188; Fisher v. Mershon, 9 Pa. Superior Ct. 238.

*J. S. Levin,* with him *Arthur S. Arnold,* for appellee.

OPINION BY BEAVER, J., March 3, 1911:

A single assignment of error raises the question involved in this case. A rule for judgment for want of a sufficient affidavit of defense was made absolute by the court below. This affirmative act and its failure to discharge the rule are the acts complained of and practically constitute but one source of alleged error.

The action of the plaintiff company is based upon a written agreement between the plaintiff and the defendant, in which the defendant agreed to use for five years from August, 1908, an act drop "to contain not more than one hundred and five square feet of advertising, in the Park Theatre, Philadelphia, Pa., during all intermissions, at all performances," etc., together with other covenants therein contained of minor importance. The affidavit of defense sets out at considerable length the defense relied upon as follows:

"For some time previous to the making of the contract upon which action is brought the Park Theatre was conducted as a regular theatre, presenting legitimate dramatic attractions, at what are known as popular prices, to wit, from one dollar down, according to the location of seats represented by the ticket sold, and the defendant had furnished an advertising curtain or curtains to the said house during said time. When the contract in question was made, the house was still conducted as a regular theatre, and it is believed that it was not the intention of the

plaintiff to change its character; and no intimation of any intention other than that the house should continue to be used as it formerly had been, and as it was being used at the time of the making of the contract, was given to the defendant, and in the contemplation of both parties thereto the contract was made for the use of an advertising curtain in a regular theatre. On March 29, 1909, the plaintiff abandoned the use of the house as a theatre and opened it as a cheap moving picture and vaudeville show, charging for admission and seats five and ten cents, and displayed the advertising curtain only at the termination of each performance, while the audience was departing and assembling, by reason of which changed character of the house and the consequent want of display of the advertisements as contemplated both by the defendant and the advertisers, the defendant has lost sums, which it would otherwise have received from advertisers, to an amount in excess of any sum which might appear to be due from the defendant up to the time of the change in the character of the house, even if the plaintiff were at liberty to disregard its contract and no longer use the act drop as contemplated by the contract during the unexpired portion thereof. And the defendant further says that the plaintiff, although requested so to do by the defendant, namely, on October 26, 1909, has not returned to the defendant its act drop or curtain placed in the theatre in accordance with the contract here sued upon, although no longer using it in accordance with the said contract, but has appropriated it to its own use; and the defendant will, on the trial of this cause, claim to set off the value of the said act drop curtain, to wit, $350, against the claim of the said plaintiff; and besides this, a certain street scene which was painted for the Forrest Theatre, a theatre controlled by the same persons who control the corporation plaintiff, and which was and is the property of the defendant, as was and is well known to the plaintiff, was taken to the Park Theatre and used and retained by the said plaintiff, and never returned to the said defendant

and the said scene was of the value of $350, which sum, in addition to the sum aforesaid, the defendant will, on the trial of this case, set off against the claim of the plaintiff, and will ask a certificate for the amount on which the plaintiff shall be found to be indebted to the defendant."

The defense is specific and clearly sets forth, as we think, the failure of the defendant to furnish to the plaintiff what was stipulated in the original agreement. The character of the performances rendered at the Park Theater was radically changed and all intermissions at the performances were eliminated, the curtain being exhibited only at the close of entertainments when patrons were leaving and when it could not be expected they would remain to read the advertisements, and they were, therefore, displayed for exhibition only at the opening of the performances. This, of course, was a complete change of the conditions upon which the agreement was made, and practically destroyed the commercial value of the curtain for the display of advertisements.

By the terms of the agreement, the curtain was to be returned at the end of the contract. The time limit of the contract was not ended, but the question as to whether or not the changed conditions did not terminate it, it seems to us, would be one for the jury, and, if that were determined in favor of the defendant, the curtain should have been returned, and, on failure to do so, the defendant would have been entitled to its value, under the circumstances set forth in the affidavit.

It seems to us, therefore, that the affidavit of defense sets forth a good defense to the plaintiff's action, if the allegations therein contained are made good, and the only tribunal which can determine whether or not they are made good by the defendant is a jury. It follows that the rule for judgment for want of a sufficient affidavit of defense should have been discharged, instead of having been made absolute.

The assignments of error are, therefore, sustained.

Judgment reversed, and a procedendo awarded.